## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| HEALTHCARE CO., LTD., a Chinese corporation,<br><br>        Plaintiff,<br><br>v.<br><br>MPI GROUP LLC, a Utah limited liability company; CVB, INC., a Utah benefit corporation; SAM MALOUF, a Utah resident; and SKY BACON TECHNOLOGY HOLDINGS, LLC, a Utah limited liability company,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [46] DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 1:25-cv-00031-DBB-CMR<br><br>Judge David Barlow |
| CVB, INC., a Utah benefit corporation; MPI GROUP, LLC, a Utah limited liability company; and SKY BACON TECHNOLOGY HOLDINGS, LLC, a Utah limited liability Company,<br><br>        Counterclaim Plaintiffs,<br><br>v.<br><br>HEALTHCARE CO., LTD., MLILYUSA, Inc., NISCO THAILAND CO., LTD., HEALTHCARE SPAIN, NISCO FURNITURE CO., LTD., HEALTHCARE SC, LLC, HEALTHCARE ARIZONA, LLC, and JAMES NI, a citizen of China,<br><br>        Counterclaim/Third-Party Defendants. | |

Before the court is Defendant Sam Malouf's Motion to Dismiss[1] Plaintiff Healthcare Co. Limited's ("Healthcare") Complaint.[2] Healthcare alleges that Mr. Malouf, acting as an agent and officer of Defendant companies MPI and CVB, made fraudulent representations that induced Healthcare to enter into a security agreement with MPI.[3] Mr. Malouf has moved to dismiss Healthcare's various claims against him by disputing that he made any misrepresentations, that Healthcare relied on his alleged misrepresentations, or that Healthcare may recover under tort law.[4] After reviewing the parties' briefing, the court finds that oral argument is unnecessary.[5]

## BACKGROUND

Healthcare is a Chinese corporation, and Mr. Malouf is an officer of Defendants MPI Group, LLC ("MPI") and CVB, Inc (CVB).[6] Healthcare alleges the following facts in its Complaint. Between June 2022 and March 2023, CVB "received $42,600,000 in products and services from Healthcare" but was unable to pay for them.[7] Sometime between March and May in 2023, CVB and MPI agreed that MPI would acquire CVB's debt to Healthcare so that CVB could continue ordering products and services from Healthcare.[8] The parties began discussing a note and security agreement to secure MPI's new obligations to Healthcare.[9] Prior to entering into any note or security agreement, Healthcare, MPI, CVB, and Mr. Malouf discussed "various pieces of property" that might have sufficient value to secure MPI's debt.[10] During these

---

[1] Def. Sam Malouf's Rule 12(b)(6) Mot. to Dismiss ("MTD") 1, EFC No. 46, filed Jul. 3, 2025.
[2] Compl., EFC No. 1, filed Mar. 11, 2025.
[3] *Id*. at ¶¶ 13, 26–27.
[4] MTD 2.
[5] *See* DUCivR 7-1(g).
[6] Compl. ¶¶ 1, 26.
[7] *Id*. at ¶¶ 8–9.
[8] *Id*. at ¶¶ 26.
[9] *Id*. at ¶¶ 9, 10, 13.
[10] *Id*. at ¶ 28.

discussions, on March 2, 2023, Mr. Malouf sent Healthcare an email regarding drafts of the note and security agreement that said the documents "represent a very executable concept of transferring the accounts payable that we have to a note and guaranty that gives Healthcare *substantial security*."[11] The parties ultimately decided that the note would be "secured by MPI's rights, title, and interest in MPI's wholly owned subsidiary, MPI Delano."[12] MPI Delano SPE, LLC ("MPI Delano") is the sole owner of property (the "Property") with a purported value of over $100,000,000.[13] While discussing the Property, Mr. Malouf represented that the membership interests in MPI Delano would secure the note and that he and MPI could pledge their interests as collateral.[14] On May 10, 2023, Healthcare and MPI entered into a note (the "Note") in which MPI promised to pay CVB's $42,600,000 debt with interest.[15] That same day, Healthcare and MPI entered into a security agreement (the "Security Agreement") that secured the Note with MPI's interests in MPI Delano.[16]

Shortly after entering into the Note and Security Agreement, Healthcare learned that the property owned by MPI Delano had already been pledged as collateral in another security agreement between MPI and Citi Real Estate Funding Inc. ("Citi").[17] The terms of MPI's agreements with Citi ("Citi Loan Agreement" and "Citi Security Agreement")—along with MPI Delano's operating agreement—prohibit MPI Delano from selling the Property, prohibit MPI and Mr. Malouf from pledging their interests in MPI Delano as collateral, and establish MPI

---

[11] *Id.* at ¶ 29 (emphasis added).
[12] *Id.* at ¶ 30.
[13] *Id.*
[14] *Id.* at ¶ 31.
[15] *Id.* at ¶ 11; Promissory Note ("Note"), ECF No. 1, Ex. A, filed Mar. 11, 2025.
[16] *Id.* at ¶¶ 13, 17; Security Agreement 1, ECF No. 1, Ex. B, filed Mar. 11, 2025.
[17] *Id.* at ¶¶ 32–33.

Delano as an LLC with the sole purpose of holding the Property as security for Citi.[18] MPI entered into its agreements with Citi on March 10, 2023, exactly two months before its Note and Security Agreement with Healthcare. On March 13, 2023, MPI publicly recorded Citi's security interest in the Property.[19] That same day, Healthcare asked Mr. Malouf to "share with us your Citi deal."[20] On March 14, 2023, Mr. Malouf responded with an email stating, "[a]s for Citi deal … [w]e are not able to use the proceeds yet however. We must now negotiate with the existing lenders to work out an arrangement where we can use the capital safely."[21] On May 23, 2023, after Healthcare had entered into its Note and Security Agreement with MPI, it asked Mr. Malouf how much of the Citi loan related to the Property.[22] Mr. Malouf responded, "[i]t's 62M."[23] Mr. Malouf never disclosed any of these restrictions on the Property or MPI Delano to Healthcare prior to the parties' May 10, 2023 agreements.[24] MPI and CVB subsequently failed to perform their respective contractual obligations to Healthcare.[25] The Note and Security Agreement both contain a choice of law provision that selects Utah as the venue and provides that the agreements are governed by California law.[26] Because Healthcare does not allege that Mr. Malouf is a party to those agreements,[27] the parties agree that the court must apply Utah law to this motion.[28]

---

[18] *See id*. at ¶¶ 38–52; Deed of Trust and Security Agreement ("Citi Security Agreement") 7, ECF. No. 47, Ex. A-1, filed Jul. 3, 2025.
[19] Citi Security Agreement 1.
[20] Compl. ¶ 35.
[21] *Id*. at ¶ 36.
[22] *Id*. at ¶ 37.
[23] *Id*.
[24] *Id*. at ¶¶ 34, 38–39.
[25] *Id*. at ¶¶ 74–80.
[26] *Id*. at ¶¶ 12, 15.
[27] *Id*. at ¶¶ 10, 13.
[28] *See Etherton v. Owners Ins. Co.,* 829 F.3d 1209, 1223 (10th Cir. 2016) ("When jurisdiction is based on the parties' diverse citizenship, a federal court must assess state law claims based on the substantive law of the state.");

**STANDARD**

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[29] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[31] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[32]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[33] "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[34] Courts may also consider "documents that the complaint

---

MTD 6 n.5; Defendant's Opposition to Sam Malouf's Motion to Dismiss ("Opp'n") 9, ECF No. 56, filed Jul. 31, 2025.

[29] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 764 (10th Cir. 2019)).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[31] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

[32] *Iqbal*, 556 U.S. at 1951 (emphasis omitted).

[33] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).

[34] *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

incorporates by reference,"[35] "documents attached as exhibits to the complaint,"[36] and "matters of which a court may take judicial notice,"[37] including "facts which are a matter of public record."[38]

## DISCUSSION

In its Complaint, Healthcare asserts three causes of action against Mr. Malouf: (1) fraud, (2) fraudulent nondisclosure, and (3) negligent misrepresentation.[39]

In Utah, a claim for fraud requires:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[40]

The elements for negligent misrepresentation are the same as those for fraud, "except that negligent misrepresentation 'does not require the intentional mental state necessary to establish fraud'"[41] and may be established where a false representation is made "carelessly or negligently."[42] Fraudulent concealment requires "that (1) the defendant had a legal duty to

---

[35] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

[36] *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

[37] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[38] *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

[39] Compl. ¶¶ 100–123.

[40] *Fid. Nat. Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 10, 344 P.3d 156, 159 (quoting *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 16, 290 P.3d 930).

[41] *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 11, 314 P.3d 1079, 1085 (quoting *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986)).

[42] *Smith v. Frandsen*, 2004 UT 55, ¶ 9, 94 P.3d 919, 922.

communicate information, (2) the defendant knew of the information he failed to disclose, and (3) the nondisclosed information was material."[43]

As a preliminary matter, Mr. Malouf asks the court to take judicial notice of and consider three documents related to the Citi Security Agreement, the Deed of Trust and Security Agreement, the Assignment of Leases and Rents, and the UCC Financing Statement.[44] Mr. Malouf argues that these are part of the Citi loan and security agreements referenced in the Complaint and are also recorded matters of public record.[45] Healthcare acknowledges that the Deed of Trust and Security Agreement is referenced in the Complaint but claims that the others are independent of the referenced agreements.[46] Healthcare also argues that Mr. Malouf seeks to introduce these documents as evidence on the merits of its claims.[47]

As noted earlier, evidence outside the pleadings usually is not considered at this stage, but there is an exception for "documents incorporated by reference into the complaint."[48] These can be considered "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[49] Because the Complaint directly relies upon the Deed of Trust and Security Agreement to establish its claims and there is no dispute about its authenticity,[50] the court will consider the Citi Security Agreement. However, the court agrees

---

[43] *HKS Architects Inc. v. MSM Enters. LTD*, 2021 UT App 70, ¶ 34, 496 P.3d 228, 239 (quoting *Anderson v. Kriser*, 2011 UT 66, ¶ 22, 266 P.3d 819).

[44] Def. Request for Jud. Notice ("Request Jud. Notice") 2, ECF No. 47, filed Jul. 3, 2025.

[45] *Id*. at 2–3.

[46] Pl. Response in Opp'n to Def. Sam Malouf's Request for Jud. Notice in Support of His Rule 12(b)(6) Mot. to Dismiss (Opp'n Jud. Notice") 2, ECF No. 55, filed Jul. 31, 2025.

[47] *Id*. at 3.

[48] *Slater v. A.G. Edwards & Sons*, 719 F.3d 1190, 1196 (10th Cir. 2013).

[49] *Waller v. Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

[50] *See* Compl. ¶¶ 48–49.

with Healthcare that the other documents are unnecessary to determine the sufficiency of

Healthcare's pleadings and so declines to consider them for purposes of this Motion.

## I.  Economic Loss Rule

Mr. Malouf contends that the economic loss rule bars all of Healthcare's claims against

him.[51] "The economic loss rule is a judicially created doctrine that marks the fundamental

boundary" between contracts and torts.[52] It requires that "when a conflict arises between parties

to a contract regarding the subject matter of that contract, the contractual relationship controls,

and parties are not permitted to assert actions in tort" unless the claim is "based on a recognized

independent duty of care."[53] Mr. Malouf argues that all three claims against him "overlap[]

entirely with the express warranties and representations" of the Security Agreement.[54] He

primarily relies on Article II and Article IV(A)(ii) of the Security Agreement.[55]

> ARTICLE II: REPRESENTATIONS AND WARRANTIES
> MPI represents and warrants to Healthcare that MPI has good and valid rights and interest in the Collateral and that MPI shall grant a security interest in MPI's interest in the Collateral. MPI further represents and warrants that under this Security Agreement upon the occurrence and continuance of an Event of Default, MPI has full power and authority to grant to, or cause its' subsidiary to grant to, Healthcare such security interest in the Collateral according to this Security Agreement. The execution and delivery by MPI of this Security Agreement has been duly authorized, and this Security Agreement constitutes a legal, valid, and binding obligation of MPI.[56]
>
> ARTICLE IV: DEFAULT
> A. EVENT OF DEFAULT. The occurrence and continuance of any one or more of the following events constitutes an "Event of Default", and provided further that

---

[51] MTD 17–18.
[52] *Reighard v. Yates*, 2012 UT 45, ¶ 19, 285 P.3d 1168, 1176.
[53] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc*., 2018 UT 61, ¶¶ 12, 15, 435 P.3d 193, 196–97 (quoting *Reighard*, 285 P.3d at 1176).
[54] MTD 18.
[55] *Id*. at 17.
[56] Security Agreement 1.

> Healthcare provides MPI reasonable notice and a reasonable opportunity to satisfy the Obligations before pursing any legal or contractual remedies against MPI. . . . (ii) Any representation or warranty made by or on behalf of MPI under or in connection with this Security Agreement is materially false as of the date on which it is made.[57]

Mr. Malouf argues that these sections essentially constitute warranties against the exact fraud claims made by Healthcare because they prohibit materially false representations related to the contract and warrant that MPI has and may grant valid rights in the collateral.[58]

"[T]he economic loss rule applies when the alleged fraud 'is also a breach of a warranty in the contract'" and bars those duplicative claims.[59] Such is the case here. Healthcare's fraud claim alleges that Mr. Malouf falsely represented material facts about whether MPI would and could "grant security in the collateral" and that the security provided by the note would be substantial.[60] Healthcare's negligent misrepresentation claim rests on the same grounds.[61] The Security Agreement contract between Healthcare and MPI expressly warrants that MPI is able to grant a security interest in the collateral and provides that any "materially false" representations "made . . . on behalf of MPI" constitute a breach of contract.[62] Because Mr. Malouf's alleged actions that form the basis for Healthcare's fraud and negligent misrepresentation claims would also constitute breaches of contractual warranties, they are barred by the economic loss rule.[63] Healthcare's fraudulent nondisclosure claim additionally alleges that Mr. Malouf failed to

---

[57] *Id.* at 2.

[58] MTD 17; Security Agreement 1–2.

[59] *Chinitz v. Ally Bank*, No. 2:19-CV-00059, 2020 WL 1692817, at *7 (D. Utah Apr. 7, 2020) (quoting *HealthBanc*, 435 P.3d at 196).

[60] Compl. ¶¶ 101–02.

[61] *Id.* at ¶¶ 116–17.

[62] Security Agreement 1–2.

[63] *HealthBanc*, 435 P.3d at 196 ("We need only decide whether the economic loss rule applies to a fraudulent inducement claim that overlaps completely with a contract claim—in the sense that the alleged fraudulent inducement is also a breach of a warranty in the contract. And we hold it does.").

disclose the true value of the collateral and the restrictions on it.[64] This likewise overlaps with the warranties in the Security Agreement because they create a broad duty to deliver a valid security interest in the collateral[65] that may be breached by either omission or misrepresentation.[66]

Healthcare first responds by arguing that Mr. Malouf is not a party to the contract and that the economic loss rule cannot apply because he owes no contractual duties to Healthcare.[67] "[T]he existence of a contract between the parties is a prerequisite to application of the [economic loss] rule."[68] Mr. Malouf is not a party to any contract with Healthcare.[69] However, when he made the alleged misrepresentations and omissions that underlie Healthcare's tort claims against him, Mr. Malouf was acting as an officer of MPI and CVB.[70] Healthcare correctly points out that an officer of a corporation may be independently liable for any fraudulent acts he commits while acting as an agent of the corporation.[71] But the issue here is not whether an officer may be liable in tort but rather whether that tort liability is subsumed into the company's contractual obligations.[72]

---

[64] Compl. ¶¶ 110–11.

[65] Security Agreement 1–2.

[66] *Anapoell v. Am. Express Bus. Fin. Corp*., No. 2:07-CV-198-TC, 2007 WL 4270548, at *7 (D. Utah Nov. 30, 2007) ("All of the plaintiff's damages flow from that alleged failure to comply with the terms of the contract. How defendant went about breaching that duty, whether by negligence, inadvertence, misunderstanding, concealment, or misrepresentation is not legally supportive of a separate legal duty sounding in tort.") (quoting *Associated Diving & Marine Contractors, L.C. v. Granite Construction Company*, No. 2:01–CV–330–DB, 2003 WL 25424908 at *6 (D. Utah July 11, 2003)) (cleaned up).

[67] Opp'n 15.

[68] *Larson v. Stauffer*, 2022 UT App 108, ¶ 30, 518 P.3d 175, 181–82.

[69] Compl. ¶¶ 10, 13.

[70] *Id.* at ¶ 26.

[71] *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 19, 70 P.3d 35, 41 ("When fraud is alleged, a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own or in which he participates, even though his action in such respect may be in furtherance of the corporate business.") (citing 37 Am. Jur. 2d *Fraud and Deceit* § 322 (1968)).

[72] *See Ennis v. Alder Prot. Holdings, LLC*, 2021 U.S. Dist. LEXIS 22734, *23 ("The alleged fraudulent misrepresentations were subsumed and included in the contract promises.").

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."[73] It does not appear that the Utah Supreme Court has directly addressed whether claims against officers acting in a corporate capacity may be barred by the economic loss rule. Therefore, this court must predict whether the Utah Supreme Court would apply the economic loss rule to prohibit fraud-based tort claims against a corporate agent who negotiated a contract and whose alleged fraud would also be a breach of warranty in the contract when attributed to the corporate principal.[74] There are several reasons to believe that it would.

First, the rationale behind the Utah Supreme Court's analysis of the economic loss rule indicates that corporate agents who negotiate contracts should be included in some scenarios. The Utah Supreme Court has explained that the economic loss rule "marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[75] In this way, the economic loss rule is designed to prevent the "blurring of the line between tort and contract law" that would come with allowing "tort claims that directly overlap breach of contract claims."[76] If a party was permitted to make

---

[73] *Stickley v. State Farm Mut. Auto. Ins. Co*., 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002)).

[74] *See Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-CV-00512, 2021 WL 409785, at *10 (D. Utah Feb. 5, 2021) ("To predict whether the Utah Supreme Court would hold that Plaintiffs' fraudulent inducement claim is barred by the economic loss rule, this court must predict whether the Utah Supreme Court would recognize a duty . . . independent of any contractual obligations between the parties.").

[75] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc*., 2010 UT 6, ¶ 28, 230 P.3d 1000, 1006 (quoting *SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assocs., Inc*., 2001 UT 54, ¶ 32, 28 P.3d 669).

[76] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc*., 2018 UT 61, ¶ 16, 435 P.3d 193, 197.

fraud claims against an agent who negotiated a contract on behalf of a corporate entity and whose misrepresentations were also a breach of warranty under the contract, the line between tort and contract would blur. Parties to contracts with corporate entities could simultaneously advance identical tort and breach of contract claims against different parties for an act attributable to the corporation through its agent. This would allow contracting parties to circumvent the economic loss rule and "recover[] beyond the bargained-for risks" by advancing tort claims against the agents necessarily involved in corporate transactions regardless of any bargained-for expectancy interests.[77]

Second, the Utah Supreme Court expressly adopted its independent duty analysis for the economic loss rule from Colorado law.[78] Utah has not wholly adopted "all of the independent duties recognized by Colorado,"[79] but the Utah Supreme Court found the Colorado Supreme Court's analysis of how the economic loss rule can "maintain the boundary between contract law and tort law"[80] to be persuasive.[81] While no Utah courts apparently have discussed the issue of corporate agents and the economic loss rule, several Colorado appellate courts have.[82] These courts reason that tort claims against corporate officers and directors are precluded by the economic loss rule when "the officers' and directors' duties, rights, obligations, or liabilities

---

[77] *Sunridge Dev. Corp.*, 230 P.3d at 1006.
[78] *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235, 240 (adopting the economic loss rule set forth in *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000)).
[79] *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 46, 221 P.3d 234, 248.
[80] *Grynberg*, 10 P.3d at 1269.
[81] *See Hermansen*, 48 P.3d 240.
[82] *See, e.g., Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1108–09 (Colo. App. 2004); *Former TCHR, LLC v. First Hand Mgmt. LLC*, 2012 COA 129, ¶ 25, 317 P.3d 1226, 1232; *Top Rail Ranch Ests., LLC v. Walker*, 2014 COA 9, ¶ 40, 327 P.3d 321, 329.

arise from the contract between the corporate entity and another."[83] This reasoning aligns well with the Utah Supreme Court's explanation that the main inquiry in an economic loss rule analysis is "whether the basis for the plaintiff's tort claims is distinct and separable from the basis for the contract claims."[84] Because the Utah Supreme Court has previously adopted Colorado's formulation of the economic loss rule,[85] and because Colorado courts use similar reasoning to Utah courts to apply the rule to corporate officers,[86] it is likely that the Utah Supreme Court would similarly apply the economic loss rule.

Third, several other jurisdictions provide persuasive reasoning that the economic loss rule should prevent claims against corporate officers who are not parties to contracts in certain situations.[87] They conclude that "[t]o find otherwise would lead to incongruous result that the economic loss rule would bar applicable tort claims against a corporation, but not against the directors or officers who negotiated the agreement."[88] This logic aligns with the Utah Supreme Court's rationale in *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc*, where the Court explained that "when a party is merely suing to recover the benefit of its contractual bargain, there is no inherent unfairness in limiting that party to a breach-of-contract claim."[89] For these reasons, it is

---

[83] *Former TCHR*, 317 P.3d at 1232 ("When the economic loss rule bars a claim against a corporate entity, it may also bar claims against that entity's officers and directors, even if the officers and directors were not parties to the contract at issue.").

[84] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc*., 2018 UT 61, ¶ 14, 435 P.3d 193, 196.

[85] *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235, 240.

[86] *See Former TCHR*, 317 P.3d at 1232.

[87] *See, e.g. Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1371 (S.D. Fla. 2008) (The economic loss rule "applies with equal force whether the fraudulent inducement and misrepresentation claims are asserted against [the corporation], or against [the officer]."); *Gilbert Unified Sch. Dist. No. 41 v. CrossPointe, LLC*, No. CV 11-00510-PHX-NVW, 2012 WL 1564660, at *4 (D. Ariz. May 2, 2012); *Foxworthy, Inc. v. CMG Life Servs., Inc*., No. 1:11-CV-2682-TWT, 2012 WL 1269127, at *4 (N.D. Ga. Apr. 16, 2012); *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1108 (Colo. App. 2004).

[88] *Ben-Yishay*, 553 F. Supp. 2d at 1371.

[89] *HealthBanc*, 435 P.3d at 197–98 (quoting *Louisburg Bldg. & Dev. Co. v. Albright*, 45 Kan.App.2d 618, 252 P.3d 597, 622 (2011)).

likely that the Utah Supreme Court would hold that the economic loss rule bars claims against corporate officers when the tort claims at issue overlap completely with contractual duties.

Healthcare argues otherwise based on *Knight Brother, LLC v. Barer Eng'g Co.*[90] In *Knight Brother*, the district court declined to dismiss fraudulent representation claims against an individual arising out of a contract that the individual helped negotiate as an agent only.[91] The court also reiterated that "an agent of a corporation may be personally liable for fraudulent acts if he participated in that tort."[92] But these two findings were unconnected. The court did not make any decisions about the scope of the economic loss rule, instead allowing the claims to proceed because the contract claims were "pleaded in the alternative" as the facts indicated a contract may have never been formed.[93] *Knight Brother* also considered that an earlier Utah case suggested "fraud claims may fall outside" the economic loss rule,[94] a possibility that was subsequently limited by *HealthBanc*.[95] Healthcare's reliance on *Knight Brother* is misplaced.

Healthcare next states that Utah law "imposes 'an independent duty on a speaker to tell the whole truth.'"[96] This, argues Healthcare, creates an independent duty sufficient to escape the economic loss rule, especially when a defendant's misrepresentations are made before a contract is signed.[97] Healthcare cites *Ennis v. Alder Prot. Holdings, Ltd. Liab. Co.*, a federal case that predicts that the Utah Supreme Court would likely find such an exception to the economic loss

---

[90] Opp'n 16.
[91] *Knight Brother, LLC v. Barer Eng'g Co.*, No. 2:10-CV-108 TS, 2011 U.S. Dist. LEXIS 6585, *19 (D. Utah Jan. 24, 2011).
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 1, 435 P.3d 193, 194.
[96] Opp'n 17 (quoting *Ennis v. Alder Prot. Holdings, Ltd. Liab. Co.*, No. 2:19-cv-00512, 2021 U.S. Dist. LEXIS 22734, at *34 (D. Utah Feb. 5, 2021)).
[97] *Id.* at 17–18 (citing *Ennis*, 2021 U.S. Dist. LEXIS 22734, at *34; *City of Fort Collins v. Open Int'l, LLC*, No. 24-1152, 2025 WL 2057738, at *5 (10th Cir. July 23, 2025)).

rule.[98] Notably, the court in *Ennis* only made this prediction after finding that the plaintiffs' fraud claims were not duplicative of their breach of contract claims,[99] because such overlap is explicitly barred by the economic loss rule.[100] Here, where Healthcare's tort claims fully overlap with its contractual rights, *Ennis* does not apply. Additionally, Healthcare argues that Mr. Malouf's allegedly fraudulent statements fall outside the scope of the economic loss rule because they occurred prior to the contract's formation.[101] The Utah Supreme Court rejected such reasoning in *HealthBanc,* noting that any "distinction between failure to perform the contract itself, and promises that induce a party to enter into a contract" is "illusory" if the misrepresented promises "are later negotiated for and included in the contract."[102] Healthcare's claims against Mr. Malouf are barred by the economic loss rule.

## II.    Reliance

Mr. Malouf next argues that Healthcare's fraud and negligent misrepresentation claims fail because the Complaint does not sufficiently allege that Healthcare relied on Mr. Malouf's statements or that such reliance was reasonable.[103] While a plaintiff need only plead a "short and plain" plausible claim supported by factual allegations in most cases,[104] claims of fraud must be pled with particularity.[105] To support allegations of fraud, "a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false

---

[98] *Ennis*, 2021 U.S. Dist. LEXIS 22734, at *31.
[99] *Id*. at *22.
[100] *HealthBanc,* 435 P.3d at 194.
[101] Opp'n 18.
[102] *HealthBanc,* 435 P.3d at 197.
[103] MTD 7.
[104] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 8(a)(2).
[105] Fed. R. Civ. P. 9(b).

statements and the consequences thereof.'"[106] Healthcare's Complaint alleges three instances of potential misrepresentation attributable to Mr. Malouf.[107] The first is an allegation that Mr. Malouf, MPI, and CVB "represented that these membership interests would secure the Note," and that Defendants "could, in fact, pledge this Collateral to Healthcare."[108] This allegation is too general and cannot form the basis for a fraud claim because it does not set forth the time and place of the referenced misrepresentations.[109] The second is a May 23, 2023 conversation in which Mr. Malouf claimed that only "62M" of the Citi Agreement was related to the Property.[110] This statement likewise cannot form the basis for Healthcare's reliance because it was made nearly two weeks *after* the agreements were finalized, so Healthcare could not have relied on it in signing the agreement.[111] The third alleged misrepresentation concerns a March 2, 2023 email in which Mr. Malouf stated that drafts of the agreement "represent a very executable concept of transferring the accounts payable that we have to a note and guaranty that gives Healthcare *substantial security*."[112] The time, place, contents, and parties to the March 2nd email are set forth,[113] so the court must determine whether Healthcare sufficiently plead that it reasonably and actually relied on that statement.

---

[106] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds* (*In re Edmonds*), 924 F.2d 176, 180 (10th Cir. 1991)).
[107] Compl. ¶¶ 29, 31, 37.
[108] *Id*. at ¶ 31.
[109] *Id*. at ¶ 31.
[110] *Id*. at ¶ 37.
[111] *Id*. at ¶¶ 10, 37; *see, e.g. Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 35, 70 P.3d 35, 45 ("AFIE could not have relied on the recreated JCDR to its detriment because it was not even made available to AFIE until after litigation commenced.").
[112] *Id*. at ¶ 29 (emphasis added).
[113] *Id*. at ¶ 29.

### A.    Actual Reliance

Mr. Malouf first argues that the Complaint fails to plead actual reliance with sufficient particularity to support Healthcare's fraud and negligent misrepresentation claims.[114] As noted above, claims of fraud must state with particularity the "consequences" of any alleged misrepresentations.[115] "[O]ne consequence that must be pleaded with particularity is the plaintiff's reliance."[116] For example, a mere allegation that plaintiffs "relied on [a] misrepresentation to their detriment, as evidenced by them opening and maintaining" accounts with the defendant is insufficient.[117] Here, Healthcare's Complaint pleads no facts indicating a causal connection between Mr. Malouf's March 2 email and Healthcare's ultimate acceptance of the agreement.[118] The Complaint only states that "Healthcare did reasonably rely on the representations by entering into the Note and the Security Agreement."[119] Aside from these formulaic recitations of an element of fraud,[120] Healthcare points to no facts suggesting that it relied on Mr. Malouf's March 2 email when it entered into the Note and Security Agreement two months later. Therefore, the Complaint does not plead actual reliance with sufficient particularity to support Healthcare's fraud and negligent misrepresentation claims.

---

[114] MTD 10.

[115] *Schwartz v. Celestial Seasonings, Inc*., 124 F.3d 1246, 1252 (10th Cir. 1997).

[116] *Chinitz v. Ally Bank*, No. 2:19-CV-00059, 2020 WL 1692817, at *7 (D. Utah Apr. 7, 2020) (citing *Parrish v. Arvest Bank*, 717 F. App'x 756, 761–62 (10th Cir. 2017) (unpublished)).

[117] *Id*.

[118] *See generally* Compl.

[119] Compl. ¶¶ 106, 120.

[120] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### B.    Reasonable Reliance

Mr. Malouf also contends that the Citi agreements were publicly recorded on March 13, 2023,[121] so Healthcare was not reasonable in relying on his alleged statements about the Property and collateral because it had two months to investigate and discover the encumbrances.[122] Because the Complaint did not sufficiently plead actual reliance, there is no need to address reasonable reliance.

## III.    Presently Existing Material Fact

Mr. Malouf next claims that his March 2, 2023 email stating that the discussed interests would "give[] Healthcare substantial security"[123] is non-actionable opinion rather than a statement of presently existing material fact.[124] Healthcare disagrees and characterizes the email as a statement of the "presently existing material fact" that "Healthcare would have an interest in collateral worth approximately $100,000,000."[125]

"Among other elements, fraudulent misrepresentation requires a false representation concerning a presently existing material *fact*. As such, statements in the nature of a mere opinion are generally not actionable."[126] "To qualify as an affirmation of fact, a statement must be objective in nature, i.e., verifiable or capable of being proven true or false."[127] Generally, "misrepresentations as to value do not . . . constitute fraud, as they are regarded as mere expressions of opinion or 'trader's talk' involving matters of judgment and estimation as to

---

[121] Security Agreement 1.
[122] *See* MTD 9.
[123] Compl. ¶ 29.
[124] MTD 10.
[125] Opp'n 12.
[126] *England Logistics, Inc. v. Kelle's Transp. Serv., LLC*, 2024 UT App 137, ¶ 46, 559 P.3d 45, 57, reh'g denied (Nov. 5, 2024) (internal citations omitted) (emphasis in original).
[127] *Boud v. SDNCO, Inc.*, 2002 UT 83, ¶ 13, 54 P.3d 1131, 1135.

which [people] may differ."[128] But, "a promise of future performance, when made with a present intent not to perform and made to induce a party to act in reliance on that promise" can constitute fraud.[129]

In this case, the Complaint alleges that, during the parties' discussions about "various pieces of property" that could potentially be used as collateral, Mr. Malouf sent an email to Healthcare.[130] In the email, Mr. Malouf said that the discussed documents "represent a very executable concept of transferring the accounts payable that we have to a note and guaranty that gives Healthcare *substantial security*."[131] Without more, this statement is a non-verifiable representation of value and therefore cannot be a statement of presently existing material fact.

First, the "substantial security" representation does not reference the Property or any other particular interest and was made during the parties' discussions about potential collateral.[132] The email cannot be a representation of presently existing fact about the collateral because it appears that the collateral was undetermined at the time it was sent. For this same reason, the statement cannot be a "promise of future performance . . . made with a present intent not to perform"[133] because it is not alleged that the parties knew what the value of the collateral ultimately chosen would be. At the time Mr. Malouf sent the email, the Property had not been pledged to either Citi or Healthcare.[134]

---

[128] *Baird v. Eflow Inv. Co*., 289 P. 112, 114 (1930).
[129] *TLS Grp., S.A. v. NuCloud Glob., Inc*., No. 2:15-CV-00533-TC, 2016 WL 1562910, at *12 (D. Utah Apr. 18, 2016).
[130] Compl. ¶¶ 28–29.
[131] *Id*. at ¶ 29 (emphasis added).
[132] *Id*.
[133] *TLS Grp.*, 2016 WL 1562910, at *12.
[134] Compl. ¶¶ 10, 29, 33.

On this record, any representation that Healthcare's note would be "substantially secured" was merely a statement of confidence that the parties would eventually agree on some mutually acceptable collateral. Healthcare's argument that the parties understood the email to be a factual representation that the collateral would be "worth approximately $100,000,000" is unsupported by the statement itself and is not cured by other fact allegations in the Complaint.[135] The Complaint states that the Property "had a purported value exceeding $100,000,000" but never attributes that figure to any particular representation made by the defendants or alleges that the $100,000,000 value was a necessary threshold for any collateral.[136]

Second, even if the "substantial security" email had made a clear representation about the Property as collateral, such a representation would be too subjective to qualify as a statement of fact.[137] Reasonable people could disagree about whether the security provided by any particular piece of collateral was "substantial," at least on facts like the ones alleged here. Healthcare's arguments imply that "substantial security" in the context of this case requires collateral worth around $100,000,000,[138] an amount that is over twice the debt the defendants allegedly owe.[139] However, there are no facts alleged suggesting that collateral worth less—even much less—than this amount would not provide "substantial security." The word "substantial" is reasonably susceptible to many interpretations. Here, the statement is fundamentally an expression of

---

[135] Opp'n 12.
[136] Compl. ¶ 30.
[137] *See Boud v. SDNCO, Inc.*, 2002 UT 83, ¶ 14, 54 P.3d 1131, 1135–36 (Explaining that a brochure's assertions relied on "inherently subjective words" because reasonable people could disagree about whether a product met the described standards).
[138] Opp'n 12.
[139] Compl. ¶ 9.

opinion.[140] The Complaint simply does not allege any misrepresentation of a presently existing material fact as required to support claims for fraud and negligent misrepresentation.

## IV.    Duty to Disclose

Finally, Mr. Malouf claims that the Complaint does not allege sufficient facts showing that he had a duty to disclose the details of the Citi Agreement and its effect on the collateral.[141] "The question of whether a duty to speak exists is determinable by reference to all the circumstances of the case," including whether there is "a relation of trust or confidence, or inequality of condition" between the parties.[142] There is no duty to speak "where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties."[143] In such cases, a "plaintiff is obliged to take reasonable steps to inform himself, and to protect his own interests."[144]

Here, the parties dealt at arm's length. The Complaint does not allege any sort of confidential relations or fiduciary duties between Mr. Malouf and Healthcare, and both parties acted in their own self-interest.[145] Though Healthcare claims that the conditions on the Property were not "ascertainable by Healthcare, absent disclosure by Sam Malouf,"[146] the Citi Security Agreement was publicly recorded almost two months before the Note and Security Agreement were signed.[147] Thus, Healthcare had access to information about the Property and its

---

[140] *Baird v. Eflow Inv. Co.*, 289 P. 112, 114 (1930).

[141] MTD 13.

[142] *DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1007 (Utah Ct. App. 1992) (citing *Elder v. Clawson*, 14 Utah 2d 379, 384 P.2d 802, 804 (1963)).

[143] *Id.*

[144] *Id.*

[145] *See First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333–34 (Utah 1990) (Explaining that parties dealt at arm's length when there was no confidential relation, fiduciary duties, or imbalance of knowledge or authority between them).

[146] Compl. ¶ 111.

[147] Citi Security Agreement 1.

encumbrances well before signing the agreement. Because the parties dealt at arm's length and the material underlying facts were publicly available to everyone involved, Healthcare has not shown a duty to disclose unless the Complaint alleges facts sufficient to show that the duty arose out of some special relationship.[148]

Healthcare points to the debtor-creditor relationship to establish a duty.[149] It relies on *In Re Eashai* for the proposition that a debtor has a "duty to disclose to his creditor his intent to defraud the creditor."[150] But *Eashai* is factually distinguishable from the circumstances here.[151] It focuses specifically on "credit card kiting" and how a debtor's use of various credit cards can create a "façade" of solvency "to hide his fraudulent intentions."[152] In other words, a debtor's duty to speak arises when his present intentions contradict previous representations made to his creditor.[153] This essentially mirrors the second argument made by Healthcare that Mr. Malouf had a duty to disclose because he had previously stated facts that he knew would make a false impression unless corrected.[154] However, as discussed above, the Complaint does not allege any actionable misrepresentations of fact by Mr. Malouf. Because the Complaint fails to allege sufficient facts giving rise to a duty to disclose, it cannot support a claim of fraudulent concealment or nondisclosure against Mr. Malouf.

---

[148] *See DeBry v. Valley Mortg. Co*., 835 P.2d 1000, 1007 (Utah Ct. App. 1992).

[149] Opp'n 13–14.

[150] Opp'n 14; *In re Eashai*, 87 F.3d 1082, 1089 (9th Cir. 1996).

[151] Additionally, the case is not binding on this court.

[152] *In re Eashai*, 87 F.3d at 1088.

[153] *Id*. at 1089 ("It follows that a credit card kiter has a duty to disclose his intention not to pay because he previously represented to the card issuer his intention to pay for charges incurred on the credit card.").

[154] Opp'n 14.

## ORDER

The court GRANTS Defendant Malouf's [46] Motion to Dismiss and dismisses the

claims against him without prejudice.


Signed September 25, 2025.

BY THE COURT

_____
David Barlow
United States District Judge